**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

|  |  |
|---|---|
| HUMBERTO SANCHEZ ARCOS, | No. 2:26-cv-01975-AYP |
| Petitioner, | **ORDER GRANTING PETITION AND ISSUING A WRIT FOR HABEAS CORPUS** |
| v. | |
| FERETI SEMAIA, et al., | |
| Respondents. | |

## I.    SUMMARY

Petitioner Humberto Sanchez Arcos ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Second Amended Petition"). Petitioner was suddenly arrested by Immigration and Customs Enforcement ("ICE"), after having resided in the United States for 27 years, when he got in his vehicle to drive to work. Petitioner filed a petition for writ of habeas corpus (the "Initial Petition") and a Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion for TRO and Preliminary Injunction") asserting that Respondents violated his due process rights, on February 24, 2026. (Dkt. No. 1 and 2.) The District Court granted the Motion for TRO and Preliminary Injunction in part and set a briefing schedule and hearing as to whether a preliminary injunction should issue. (Dkt. No. 6.) On April 6, 2026, the Court issued an Order granting Petitioner's Motion for Preliminary

Injunction ("Preliminary Injunction Order"). (Dkt. No. 13.) Petitioner filed the Second Amended Petition for writ of habeas corpus contending that Respondents' post-release Order of Supervision ("OSUP") violates the conditions of the District Court's Preliminary Injunction Order and seeking further relief, on April 24, 2026. (Dkt. No. 20.)

Respondents argue that changed circumstances warranted imposition of GPS ankle monitoring and that Petitioner's request for relief should be rejected for failure to exhaust administrative remedies. Respondents further assert that they have fully complied with the District Court's April 6, 2026 Preliminary Injunction Order, Petitioner's release from the ICE detention facility fully resolves the relief sought in the Petition, and the issues raised in the Second Amended Petition are not appropriate for habeas relief. Petitioner asserts that Respondents have failed to comply with the conditions of the District Court's April 6, 2026, Preliminary Injunction Order, the GPS ankle monitoring constitutes custody, and the relief sought in the Initial Petition is therefore not moot.

For the reasons set forth below, the Court finds that Petitioner's release from the ICE detention facility does not moot the Petition, Respondents failed to provide Petitioner with adequate pre-deprivation process at the time of his sudden detention on January 19, 2026, and Respondents' post-release conditions further violate the District Court's April 6, 2026 Preliminary Injunction Order and Fifth Amendment Due Process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring the immediate restoration of Petitioner's liberty to the conditions existing at the time of his detention on January 19, 2026, and preventing further restrictions on his liberty absent adequate pre-deprivation process.

## II.    FACTS AND PROCEDURAL HISTORY

Petitioner represents that he is a native and citizen of Mexico who entered

the United States without inspection on or about March 1999. (Dkt. No. 13 at 2.) Petitioner asserts that he was placed in ICE custody in 2013 following an arrest for Driving Under the Influence ("DUI"). *Id.* Petitioner contends that he was granted bond and released from ICE custody. *Id.* Based on the submission by the Parties it appears there were no other conditions set by ICE following his release from custody. (Dkt. No. 13, 20, and 24.) Respondents assert that USCIS granted administrative closure of Petitioner's  removal proceedings for failure to complete the administrative process on July 9, 2024. (Dkt. No. 24 at 2.) Respondents contend that the Department of Homeland Security ("DHS") filed a Motion to Recalendar on September 18, 2025, and an IJ granted DHS' Motion to Recalendar on November 3, 2025. *Id.*

Petitioner represents that he was suddenly detained by DHS agents, after entering his vehicle to drive to work, on January 19, 2026. (Dkt. No. 13 at 2.) Petitioner asserts that the DHS agents claimed to have a valid warrant for his arrest. *Id.* However, Petitioner contends that DHS did not present the arrest warrant to him, and he called 911 for assistance. *Id.* Petitioner represents that the DHS agents broke the windows of his vehicle, broke his cellphone, and pulled him from his vehicle. *Id.* Petitioner asserts that he sustained injury to his finger from the shattered glass resulting from the DHS agents' conduct. *Id.* Petitioner contends that he was subsequently detained at the Adelanto ICE Processing Center and Respondents did not provide him with a bond hearing. *Id.*

Petitioner asserts that, prior to detention, he was under the care of a neurologist to monitor his active brain bleed. (Dkt. No. 13 at 3.) Petitioner asserts that he suffers from severe medical conditions, including two recent strokes which resulted in partial paralysis and numbness on his left side. *Id.* Petitioner represents that while in detention he went without access to medical care for several weeks, was denied access to prescription medications brought

to him by his family, and was forced to take aspirin, which, for Petitioner, is potentially deadly due to his medical condition. *Id.*

On April 6, 2026 the District Court granted Petitioner's Motion for Preliminary Injunction and issued an order providing that "Respondents are enjoined and restrained from re-detaining Petitioner without immediately providing him with a pre-deprivation bond hearing." (Dkt. No. 13 at 8.) The Parties submitted a Joint Status Report on April 6, 2026, informing the Court that Petitioner was released from the immigration detention facility. (Dkt. No. 14 at 2.) Upon his release, Respondents for the first time, enrolled Petitioner in the ISAP Electronic Monitoring Program (the "ISAP Program"). (Dkt. No. 20 at 14.) The conditions of the ISAP Program include Petitioner's agreement to wear a "non-removable GPS ankle bracelet, which will be attached by an ISAP Case Specialist" and bar him from travelling more than 75 miles from his residing address. *Id.*

This Court held a Status Conference on April 16, 2026 (the "Status Conference"). (Dkt. No. 16.) At the Status Conference, Respondents asserted that the relief sought in the Initial Petition is moot because Petitioner has been released from the immigration detention facility. *Id.* at 1. Petitioner asserted that Respondents' post-release conditions amount to continued custody, and the relief sought in the Initial Petition is therefore not moot. *Id.*

The Court ordered supplemental briefing as to whether Petitioner's post-release supervision conditions comply with the District Court's April 6, 2026 Preliminary Injunction Order. (Dkt. No. 16 at 2.)

Accordingly, Petitioner submitted a Second Amended Petition on April 24, 2026. (Dkt. No. 20.) In the Second Amended Petition, Petitioner asserts that Respondents' post-release conditions violate the District Court's April 6, 2026 Preliminary Injunction Order. (Dkt. No. 20 at 3-5.) Petitioner further contends that GPS ankle monitoring is custody under controlling authority and that he

4

"remains subject to significant restraints on liberty that are directly traceable to the challenged detention and independently sufficient to sustain habeas jurisdiction." (Dkt. No. 20 at 7.)

Respondents submitted a Response to Amended Petition ("Response to the Second Amended Petition") on May 11, 2026. (Dkt. No. 24.)  In their Response to the Second Amended Petition, Respondents argue that Petitioner's arrests in 2022 and 2013 warrant imposition of GPS ankle monitoring. (Dkt. No. 24 at 3.) Respondents further contend that the relief requested in the Second Amended Petition should be denied because Petitioner has failed to exhaust administrative remedies and that they have complied with the District Court's Preliminary Injunction Order because Petitioner's release from the immigration detention facility has fully resolved the relief sought in the Initial Petition. (Dkt. No. 24 at 4.)

Both parties have consented to proceed before the Magistrate Judge. The matter is now fully briefed and submitted for decision.

## III.   DISCUSSION

### A. The Court Has Subject Matter Jurisdiction

This Court has subject matter jurisdiction. 28 U.S.C. § 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing INS v. St. Cyr, 533 U.S. 289, 301–03 (2001)). Accordingly, 8 U.S.C. § 1252(g) does not bar review here. The Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 remains an available forum for statutory and constitutional challenges to detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Having established jurisdiction, the Court turns to the merits of

Petitioner's due process claim.

### B. Respondents Failed to Provide Petitioner With a Custody Redetermination Hearing in Violation of Fifth Amendment Due Process.

This Court concurs with the findings of the District Court's April 6, 2026 Preliminary Injunction Order that there is a likelihood of success on the merits of the Initial Petition and finds that Respondents failed to provide Petitioner with adequate pre-deprivation process at the time of his detention on January 19, 2026. Petitioner asserts that Respondents failed to provide him with the constitutionally protected custody redetermination hearing due at the time of his detention. (Dkt. No. 13 at 2.) Respondents contend that "Petitioner appears to be a member of the Bond Eligible Class in *Maldonado Bautista v. Santacruz*." *Id.*

The record before the Court demonstrates that Respondents failed to provide Petitioner with an opportunity to be heard as to whether he poses a flight risk or a danger to the community in violation of Fifth Amendment Due Process.  The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due process of law. Freedom from physical restraint lies at the core of this protection. *See Zadvydas*, 533 U.S. at 690–91.

This Court agrees with the findings of the District Court that "Respondents make no argument that Petitioner is a danger or flight risk nor have they articulated any other reason for his detention, let alone a reason for a post-detention, rather than pre-detention bond hearing." (Dkt. No. 13 at 7.) Respondents concede that Petitioner appears to be a member of the Bond Eligible Class certified in *Maldonado Bautista* and that Petitioner's claims

regarding entitlement to a bond hearing are subject to the *Maldonado Bautista* judgment.

As Respondents have conceded that Petitioner is a class member entitled to a bond hearing under the reasoning of *Maldonado Bautista*, the Court finds that Respondents' failure to provide Petitioner with a custody redetermination hearing at the time of his detention on January 19, 2026, violates due process for the reasons stated in the orders in that case. *See Maldonado Bautista*, 2025 WL 3713987, at *8-*22.

### C. The Court Has Jurisdiction to Review the Constitutionality of Respondents' Post-Release Restrictions

Respondents argue that the relief sought in the Second Amended Petition should be rejected for failure to exhaust administrative remedies. Respondents further contend that that the relief sought in the Second Amended Petition has been improperly brought before this Court because "Such post-release complaints fall well outside the scope of 25 relief under 28 U.S.C. § 224l(c) and should not be resolved in federal court..." (Dkt. No. 24 at 3.) In the context of a habeas petition, administrative exhaustion is merely prudential, and not mandatory. *see Y.S.G. v. Andrews*, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025) ("The federal habeas statute under which this case was filed does not require exhaustion of administrative remedies."). Indeed, the exhaustion requirement may be waived "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation marks omitted). Petitioner bears the burden of showing that an excuse for exhaustion applies. *See Leonardo*, 646 F.3d at 1161.

The Court concludes that Petitioner has satisfied his burden to show that Respondents failed to provide him with a custody redetermination hearing in

violation of Fifth Amendment Due Process, and that Respondents failed to comply with the District Court's April 6, 2026 Preliminary Injunction Order which sought to remedy the constitutional harms to Petitioner. *See, e.g., C.A.R.V.*, 2026 WL 241823, at *4 ("As mentioned previously, any alleged exhaustion requirement in this case must fully contend with the Court's continuing authority to enforce its own injunction."). Accordingly, Respondents' failure to comply with the District Court's April 6, 2026 Preliminary Injunction Order presents a sufficient basis on which to waive exhaustion of administrative remedies.

**D. Respondents' Post Release Conditions Violate Due Process.**

Petitioner argues that Respondents' imposition of GPS ankle monitoring as a condition of his release fails to comply with the District Court's April 6, 2026 Preliminary Injunction Order. (Dkt. No. 20 at 3-5.) Petitioner further asserts that GPS ankle monitoring is custody under controlling authority and Respondents' imposition of such significant restraints on his liberty fail to adequately remedy the relief sought in the Motion for TRO and Preliminary Injunction and the Initial Petition. (Dkt. No. 20 at 7.) Respondents assert that the Court should deny the Second Amended Petition because they have fully complied with the District Court's April 6, 2026 Preliminary Injunction Order, Petitioner's release from the immigration detention facility has resolved the relief sought in the Initial Petition, and the issues raised in the Second Amended Petition are not appropriate for habeas relief.

The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due process of law. "Custody" stems beyond physical imprisonment and a court may afford habeas relief to an individual, who, as here, is subject to "restraints not shared by the public generally," including parole and other forms of release accompanied by restrictions on an individual's freedoms. *Jones v. Cunningham*,

371 U.S. 236, 240 (1963); *see also Munoz v. Smith*, 17 F.4th 1237, 1241 (9th Cir. 2021) (quoting *Jones* and holding that custody "encompass[es] circumstances in which the state has imposed 'significant restraints on [a] petitioner's liberty' "); *Nowakowski v. New York*, 835 F.3d 210, 217 (2d Cir. 2016) (quoting *Jones* and explaining that restrictions that "require [the petitioner's] physical presence at particular times and locations, both for community service and court appearances," and which "carry with them the potential for future adverse consequences during the term of the sentence, including arrest for noncompliance and modification or revocation of the conditional discharge" constitute custody because such restrictions are " 'not shared by the public generally' ").

On the record before the Court, Respondents' post-release conditions violate the terms of the District Court's April 6, 2026 Preliminary Injunction Order and are in violation of Petitioner's Fifth Amendment due process rights. The District Court's April 6, 2026 Preliminary Injunction Order provided that "Respondents are enjoined and restrained from re-detaining Petitioner without immediately providing him with a pre-deprivation bond hearing." (Dkt. No. 13 at 8.) There is nothing in the record to demonstrate that Petitioner was subject to GPS ankle monitoring at the time directly preceding his January 19, 2026, detention, and Respondents imposed this new condition absent providing Petitioner with a constitutionally protected pre-deprivation hearing. Although the Order does not explicitly bar GPS ankle monitoring, the grant of the Preliminary Injunction was to ensure that Petitioner was returned to the status quo. The Ninth Circuit defines status quo ante litem as "the last uncontested status which preceded the pending controversy." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1191 (9th Cir. 2024). The District

9

Court did not expressly bar GPS ankle monitoring because it was not imposed at the time the Preliminary Injunction Order was decided.

The Court analyzes Petitioner's due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976). Applying these considerations here, each factor weighs strongly in Petitioner's favor.

**1. Private Interest**

Petitioner argues that Respondents' imposition of GPS ankle monitoring as a condition of his release constitutes custody under controlling authority. (Dkt. No. 20 at 4.) Petitioner further asserts that Respondents' continued custody stems from the constitutional violations alleged and the relief granted in the District Court's April 6, 2026, Preliminary Injunction Order. (Dkt. No. 20 at 7.)  Petitioner argues that Respondents' failure to comply with the  District Court's April 6, 2026, Preliminary Injunction Order and fully redress the constitutionally protected harms to Petitioner warrants habeas relief. *Id.*

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall ... be deprived of ... liberty ... without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields

significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

The Court agrees with Petitioner that due process principles prohibit Respondents from placing restrictions on Petitioner's liberty and continuing to hold Petitioner in custody without adequate pre-deprivation process or a material intervening change in circumstances.

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining his settled life out of custody and free from restrictions on his release. Petitioner asserts that he was released on bond pending removal proceedings on or around 2013 and an IJ subsequently granted administrative closure of his  removal proceedings. (Dkt. No. 13 at 2.) Respondents contend that an IJ granted DHS' Motion to Recalendar on November 3, 2025, and Petitioner's arrests in 2022 and 2013 present changed circumstances sufficient to warrant imposition of GPS ankle monitoring. (Dkt. No. 24 at 2 and 3.) There is nothing in the record before the Court to demonstrate that Petitioner's prior arrests present changed circumstances sufficient to warrant the imposition of new restraints on his liberty. With respect to the 2013 arrest, Petitioner was released on bond shortly afterward. (Dkt. No. 13 at 2.) Further, Petitioner's removal proceedings were administratively closed, subsequent to his 2022 arrest, on July 9, 2024. (Dkt. No. 24 at 2.) The record before the Court reflects that after learning of Petitioner's 2022 and 2013 arrests, Respondents subsequently made the determination to release him on bond and further allowed his removal proceedings to be administratively closed. (Dkt. No. 13 at 2; Dkt. No. 24 at 2.) As such, the record before the Court demonstrates that Respondents affirmed

11

Petitioner's ability to reside freely in the community without GPS ankle monitoring subsequent to his 2022 and 2013 arrests.

While Petitioner remained subject to the authority of the immigration laws during this time he remained free from any restrictions on his liberty and, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles h[er] to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases).

In consideration of the guiding principles and relevant authority, and the undisputed record of Petitioner's unrestricted release at the time of his January 19, 2026, detention, the Court finds that Petitioner's interest in remaining at liberty without restrictions is both substantial and well-established. Accordingly, the Court concludes that the Due Process Clause protects Petitioner's substantial interest in maintaining free from newly imposed restrictions on his liberty absent adequate pre-deprivation process.

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that Respondents' failure to articulate any change in circumstance preceding the imposition of Petitioner's release restrictions creates a significant risk of erroneous deprivation. Civil immigration detention is constitutionally permissible only to prevent flight or protect the community from danger. *Zadvydas*, 533 U.S. at 690–91. Yet nothing in the record suggests that Petitioner's continued release without restrictions threatened either interest at the time that Respondents imposed restrictions on Petitioner's liberty that were

not previously in place immediately prior to the time of Petitioner's recent detention.

First, Respondents identify no material change in circumstances arising between the time of Petitioner's detention on January 19, 2026, and the restrictions on Petitioner's liberty that were imposed on April 6, 2026. There are no new allegations of criminal conduct and no new facts in the record subsequent to Respondents' prior affirmations that Petitioner could reside freely in the community, that would lead a reasonable officer to conclude that Petitioner suddenly became a danger or flight risk at the time of his release from custody on April 6, 2026.

Second, the procedure employed here creates a substantial risk of error. Petitioner alleges that Respondents suddenly conditioned his liberty on compliance with electronic monitoring after DHS had previously made determinations that such monitoring was not required. As *Saravia* explained, due process in this context requires a prompt, pre-deprivation hearing before a neutral decisionmaker at the time of deprivation, not some time after the liberty loss has already occurred. *Saravia,* 280 F. Supp. 3d at 1194–97.

Despite the District Court's April 6, 2026, Preliminary Injunction Order providing that "Respondents are enjoined and restrained from re-detaining Petitioner without immediately providing him with a pre-deprivation bond hearing."(Dkt. No. 13 at 8), Respondents provided no advance process to assess whether revoking Petitioner's freedom from restriction would further the permissible purposes of immigration detention. On this record, the Court concludes that the risk of erroneous deprivation is unacceptably high.

**3. Government Interest**

As to the third *Mathews* factor, the Government's interests, as reflected in the record before the Court, are insufficient to justify the deprivation of liberty here. Although the Government has a legitimate interest in enforcing

13

the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who has been safely residing in the community. Prior to Petitioner's January 19, 2026 detention, DHS had affirmed Petitioner's ability to reside freely in the community without restrictions on his liberty. (Dkt. No. 13 at 2; Dkt. No. 24 at 2.)

The Ninth Circuit recognizes that the Government has no legitimate interest in the deprivation of one's liberty interest where that individual can be safely supervised through less restrictive means. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Further, *Saravia* explained that the administrative burden of providing a brief, neutral hearing to assess any material change in circumstances is minimal, particularly where DHS already conducts such hearings in other detention contexts. 280 F. Supp. 3d at 1199–1200.

Here, Respondents identify no operational, administrative, or public-safety reasons that would have prevented them from providing Petitioner with pre-deprivation notice or a meaningful opportunity to be heard, nor do they articulate any individualized risk that could justify dispensing with such safeguards. Respondents' interest in proceeding without adequate pre-deprivation notice or a hearing prior to the imposition of new restrictions on Petitioner's liberty is therefore diminished and unsupported by any new factual development, while Petitioner's liberty interest remains substantial.

Accordingly, the third *Mathews* factor weighs decisively in Petitioner's favor.

In sum, Petitioner has a strong interest in remaining free from restrictions on his liberty, there is a significant risk that the Respondents' lack of constitutionally adequate procedures has resulted in an unnecessary restriction of Petitioner's liberty, and the Government's interest in refusing to

14

provide such process is minimal. The Court therefore concludes that Respondents' imposition of post release restrictions, without adequate pre-deprivation process, fails to comply with the District Court's April 6, 2026, Preliminary Injunction Order and is a violation of due process.

## IV.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued reaffirming Petitioner's release from the immigration detention facility and requiring the immediate restoration of Petitioner's liberty to the conditions existing at the time of his detention on January 19, 2026 and preventing further restrictions on his liberty absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to impose restrictions on Petitioner's liberty prior to the imposition of such conditions; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been relieved of release restrictions and his liberty has been restored to the conditions existing at the time of his detention on January 19, 2026.

IT IS SO ORDERED.

DATED:   June 17, 2026

_____
ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

15